SATIC v. ASHCROFT is submitted. We'll hear CORTEZ v. TERHUNE. Counsel, please proceed. May it please the Court, Deputy Attorney General Teresa Patterson on behalf of Appellant. In this case, the California Court of Appeal rejected CORTEZ's claim of ineffective assistance of counsel by finding that the evidence of guilt was so overwhelming he had not suffered any prejudice as a result of trial counsel's actions. The issue before this Court is whether the ---- I was kind of worried about the prejudice. I thought when I saw the prosecutor's reference to the imaginary person, that's a great defense, the empty chair defense, blaming in a civil or criminal case, blaming the wrongdoing on somebody who wasn't there, and blowing it apart by saying that the person is imaginary is a great rebuttal to it. The only thing is the person wasn't imaginary, and I'm wondering whether that really matters. My response to that question is that the prosecutor's comment was an isolated comment. It's an isolated comment, but a very trenchant point that the prosecutor made. Right. But the remainder of the prosecutor's argument focused solely on the evidence. This was an unfortunate choice of words, since the prosecutor knew that Morales did indeed exist. But in the context of her entire argument ---- I'm not looking at it as prosecutorial misconduct. There I'm inclined to agree with you that you get a little carried away in argument. The words aren't what they should have been. And I'm looking at it in terms of the prejudice. And on the prejudice, the guy who says it wasn't his dope, it was mine, isn't there. And the whole tenor of the trial is to suggest that there's no such person. Right. The issue before this Court, though, is whether the California court of appeals finding that there was no prejudice is contrary to or an unreasonable application of Strickland. Let me ---- this is my problem with their analysis. Their analysis assumes that if the jury had heard either directly through testimony or through the prior statements from Morales, and that they would have credited ---- nonetheless credited everything the police said rather than what Morales said. Right? In other words, for example, the California court of appeals says the police saw Appellant furnishing narcotics to a person at the mobile home. That was an inference which they could believe or not believe. And this Court assumes they're going to believe it despite what Morales says. Right? And you could have called for almost everything, not everything, but almost everything on which the Court relied. Similarly, that they saw him carrying a lockbox. They say they did. But if Morales is telling the truth, then they didn't. So they didn't have to believe it. Not necessarily, because Morales's testimony would not have necessarily touched on the officer's testimony. It would not have necessarily contradicted what the officers testified to. But they didn't have to believe what the police said, especially since there was some contradiction between the police at times. They didn't have to believe it. This analysis assumes that they believe everything the police said. Not necessarily. There are several factors that were undisputed. And those are the latter factors relied upon by the California court of appeal, such as the fact that there were pay-and-no ledgers in the car he was driving, that he was found to be in possession of keys to the rear unit and to the lockboxes which contained the cocaine, and that it was inexplicable why Morales would give him these keys if he merely wanted Cortez to let a repairman in. Counsel, I found that comment by the California court to be very persuasive. The only thing that made sense in this case to me of the facts, even if you assume Morales saying it was my dope instead of assuming what the jury heard was that Morales was imaginary, the only reasonable explanation is what the California court said, that Morales and Cortez were co-conspirators. They're both selling the dope and both had access, because the evidence is they both had access to it. And nobody's going to lend somebody a quarter of a million dollars' worth of highly portable inventory. Nevertheless, that theory wasn't presented to the jury. What are we supposed to do in a case where the theory that makes sense of the facts wasn't presented? I'm a little confused by your question. What exactly by that theory are you referring to? The theory that Cortez and Morales, that Morales existed but Cortez and Morales were selling the dope together as co-conspirators. Well, I don't think it makes a difference under the facts of this case. It wouldn't make Cortez any more or less culpable if he had a co-conspirator. The bottom line is he had keys. It wouldn't if that's what the jury believed. However, that theory was never presented. The jury never got a chance to pass on it. Instead, they were presented with a case that really was misleading, because Morales wasn't there. Well, misleading in the sense that they didn't know that there was perhaps another individual also involved. But if you only look at the facts that they were presented with, there's really no other reasonable explanation from which to infer based on the fact that he had keys to $260,000 worth of narcotics. And that's the most important evidence in this case, because it's undisputed he had those keys. And his only attempt to explain his possession of those keys completely backfired at trial when it was shown that the defense entered into evidence, forged documents to try to support Cortez's theory of why he possessed keys to the rear unit. And it's a very unusual case here, because I agree with the Court that in many cases a confession is very damaging evidence and very crucial, but under the facts of this case, it would not have made a difference. And again, the question is not whether this Court believes there was prejudice. The question is whether the California court of appeals' decision to the contrary was objectively unreasonable. Kagan. This gets into it. Is that the question, or is it a Brecht-Erik question? I guess it isn't Brecht-Erik, but it's true. Okay. Go ahead. One thing about the facts that kind of bothers me is the – as I understand it, were you the – you weren't the trial lawyer. Yeah. The trial lawyer, the prosecutor in this case, interfered with the plea agreement arrangements that were going on. I remember Arizona or somewhere. And as a result, Morales ended up serving prison time based on the fact that this – the information that he was involved in this crime was presented in that case. And I do think there's – this gives off a whiff of improper prosecutorial misconduct because it's inconsistent theories. It's like when you try one co-defendant on one theory that he's culpable and try the other on a different theory, you can get two guilty verdicts when only one person might be culpable. And so I'm really troubled by that. And there's various instances of this sort of thing happening throughout this case. My response to that, it is not entirely clear what the prosecutor did. She explains herself at sentencing hearing and says that she had nothing to do with the sentence Morales received in Arizona. She merely called to question about his whereabouts and to make inquiries about what was going on with his case. And it's not on the record, but it's plausible that that conversation led to further inquiries, and it was established why she was making these inquiries. And it likely came out that Morales had made this confession. Right. So he's – so – But that's not – Wait. No, but the government – so the government is in the position of saying or that he confessed to this crime and we believe it, and so he's going to get a greater punishment in another venue, but we're going to exclude it from this case where we're trying Cortez and pretend that never happened so that we can convict Cortez, too. And it just seems that, you know, when prosecutors are supposed to be doing justice and acting in the public interest, it just seems that that is not in the public interest to handle a case in that manner. Your Honor, it's unclear what was in the prosecutor's head in this case. And we don't know what she believed as far as whether she believed Morales or didn't believe Morales. I don't think there's any indication she ever spoke to Morales. So perhaps – and we don't know why the sentencing court in Arizona did what it did. You know, I'm cool on the misconduct theory because it's not a direct appeal and it's not the way the case is briefed. But I'm troubled by the same thing Judge Wardlaw is. She calls the prosecutor in Arizona, finds out they're hammering Morales, and they know that Morales exists and this was his dope. And then she tells the jury in this case, Morales is imaginary. It's just that Cortez trying to blame it on somebody that doesn't exist. Cortez is caught red-handed with a quarter of a million dollars worth of dope and there's nobody else around. I don't know how a prosecutor can do that. I don't know what was her motivation for making the comment during closing argument other than it being in the heat of battle. Winning. Winning. Winning. That's the motivation. But again, this is an ineffective assistance of counsel case, not a prosecutorial misconduct case, where we're really looking at prejudice. Right. But you know what else we're looking at? When we look at prejudice, we're looking at whether, and I think you'll agree with this, whether the state court of appeals was unreasonably incorrect when it said the evidence was overwhelming. And my take on it is if you take some of these things into account, the evidence is actually weak. And is it unreasonable to squarely believe one side of the case when you know, in fact, that it was a misrepresentation of what the case really was, given that afterwards, you know, everybody acknowledges this? Well, my response to the court of appeals' characterization of the case is overwhelming. It's perhaps the court of appeal relied on too many factors, because a lot of them you're correct. They were subject to interpretation. But the most important factors it relied on were based on undisputed evidence. The two being that he had the keys and that he falsified the evidence. And the value of the narcotics. All right. But as to the keys and the value of the narcotics, if Morales had been there, he could have explained it, if he had testified. No, that's not true. I disagree with that, Your Honor, because his explanation that he provided in the letter to the court, or to the trial court, was that he left his keys with Cortez so that he could let a repairman in while he went and got furniture that day. That simply is not believable in light of the fact that Cortez was out running errands that day. So how is he supposed to let a repairman in if he isn't even home? Well, there was the guy who came to the door at the beginning who, I don't know, buying drugs, but we don't know who he was. Well, there was a man who came to the door at 7.30 in the morning, and Cortez said that Morales didn't drop the keys off until 10 o'clock. So it would have to be based on an arrangement that a repairman would come at some point after 10 o'clock. I have a little different key-related question. As I recall, the police testimony changed between Friday and Monday on throwing the keys out the window, and it also changed between Friday and Monday on whether the police saw Cortez carry the lockbox. I would think that any jury would infer from a witness's testimonial changes between Friday and Monday that somebody woodshedded the witness between Friday and Monday. What happened was the second officer, Officer Kim, was asked, do you recall Cortez having anything in his hands when he walked from the front unit to the rear unit the first time? And his answer was, I don't recall. He then testified that Cortez had a white bucket in his hand the second trip he made. Then after the break, the weekend break. You mean the weekend break? Weekend break. You don't mean a 10-minute recess to go to the bathroom? No. Weekend break. Weekend break. And after the weekend break, he clarified that after reviewing the police report, he recalled that he saw a box in Cortez's hand the first time he walked from the front unit to the rear unit. Funny he didn't remember Friday. All I can say is that it's fairly common for the reason I bring it up is it bears on whether the evidence was so overwhelming that the jury would have reached the same conclusion even if Morales had shown up. My feeling is if back when I used to do this sort of thing, if I ever caught a witness in that material, a change between Friday and Monday, I would expect the jury to be or if my adversary did with one of mine, I would expect the jury to be very interested in that change of testimony and to hold it against the party to profit it. That's a fair comment, and defense counsel fully argued that point. Another thing that struck me about the evidence is the evidence about throwing the keys out of the car seems to me to be about as credible as the evidence of him having the keys to the $250,000. Why would anybody throw keys to their house out of the car? It would make sense to throw the keys, the other keys out of the car, but why would he throw those keys out of the car? I don't know why, but I would like to address the discrepancy between the testimony of throwing the keys out of the car. After the weekend break on cross-examination, defense counsel asked Officer Kim, are there any other changes you'd like to make based on your, on refreshing your recollection with the police report? He had never been asked either before the break or after the break by the prosecution about whether he saw anything thrown out the window, and he volunteered upon questioning by the defense counsel that, oh yes, one other thing, I saw keys being thrown out the window. So it's not necessarily inconsistent. He was just never asked. Unless this Court has a further question, I'd like to reserve my remaining time for rebuttal. Roberts. You may.  Thank you, counsel. Counsel. Good afternoon, Your Honor. My name is Renee Maness of the Federal Public Defender's Office on behalf of Petitioner and AFLE. Going to the prosecutorial issues of how the prosecutor addressed the existence of Morales, I did want to point out that the prosecutor's comment in closing argument is not isolated. If you look at the excerpts of records, Volume I, ER, page 91, the prosecutor also brought forth testimony from the police questioning whether anyone lived in that apartment, asking the policeman was there a bed, was there clothes, were there pictures, setting up the contention that no one really lived in that apartment. This was not an isolated extemporaneous statement by the prosecutor at closing argument that happened in the heat of passion. This is something that that prosecutor went into intentionally. I'm going to tell the jury Morales doesn't exist, even though I know for a fact he exists. I know he said he was in this apartment. I know he said these drugs were his. I know he is right now sitting in an Arizona county jail because he was caught importing even more drugs into the country. Incidentally, I don't know if this comes up procedurally. Maybe you can educate me. What are we supposed to do with the misconduct, exactly, if there was misconduct? I think Your Honor was correct that to the extent there are icky prosecutorial issues in the case, that goes to whether or not the evidence, particularly all of which is based on Officers Walters and Kim, is in fact overwhelming. So misconduct as such is not before us. Misconduct as such is not before us. What is before us is that to deal with whether the evidence is so overwhelming that it wouldn't have mattered if the lawyer had subpoenaed the witness. Correct. Although, actually, the lawyer did subpoena the witness, which was ineffective. The lawyer failed to file the act pursuant to the Uniform Act of Secure Attendance of Witnesses, which is what he knew and everyone else knew was necessary. There was other – I mean, the reason I see all this misconduct kind of making the case weaker, I mean, there were other things that weren't objected to. For example, I guess ER-677, a clearly improper line of questioning about pitting Cortez's credibility against the police, asking him to say, yes, the police lied. That's another clearly improper, non-objected-to thing that's in this transcript. And there's more examples of that. Correct. And so to me, that tends to weaken the case because there's unfair advantage and it also affects credibility. It certainly does. And the fact that Mr. Cortez was forced to take the stand in this case in an attempt to get in the documentary evidence that would prove Morales's existence is one of the prejudicial impacts of trial counsel's ineffectiveness. If Morales had been present, if the statements by Morales had come in, if his prior sworn testimony was presented to the jury, if the admissions professor to Detective Walters on the day Mr. Cortez was arrested were admitted in evidence, Mr. Cortez never would have taken that stand. He never would have been pushed to do that. And as this Court noted in the decision in Johnson v. Baldwin, the fact that trial counsel fails in his conduct and puts a client in the position of taking the stand where the client's credibility is attacked, he may be caught in the lie, is specifically one example of the prejudice that can result from ineffective assistance of counsel. Addressing the issue of why on earth would Morales give Mr. Cortez the keys to his apartment with a quarter of a million dollars in drugs in the apartment, you also have to recognize that Mr. Morales allowed Mr. Alonzo, Cesar Alonzo, his friend, to carry the drugs into the apartment in the first place. He gets caught in Arizona not much later driving drugs across the border. Mr. Morales is a young man and apparently not a terribly sophisticated criminal. It's not unusual for criminals to be dumb, to make mistakes, to actually give keys to people regarding drugs that they shouldn't give keys to. Kagan. Is there a TV show about that? Pardon? Is there a TV show on that? There are hundreds of TV shows about the stupidity of criminals. There's actually a book on it by Richard Herrnstein and another fellow. They range about 15 points lower on IQ. They probably do, and I meet with so many of them every day that it never ceases to be. Help me on two things that are bothering me. One is suppose we were to agree with you on the prosecutorial misconduct, and suppose we were to have the same feeling as you that it bore somehow on the prejudice from ineffective assistance. Could you lay out explicitly what the chain of logic is? How do you relate the prosecutor conducting herself improperly to there being prejudice? I think that you lay it out by going through the analysis such as the Magistrate Wistrich did in the report and recommendation. He noted that the California Court of Appeals said this was an overwhelming evidentiary case. However, at the same time, he said the California Court of Appeals did that by accepting without question everything the prosecutor presented and everything Walters and Kim testified to and without acknowledging anything that called into question their evidence. The California appellate court never acknowledged that Walters and Kim disagreed on three critical issues in their testimony, which Kim doesn't remember until he's off the stand a week. And it's not just whether the keys are thrown out of the car. It's a whole issue of Mr. Cortez took an entire trip with some other individual that they all chased him down and watched and thought he was doing a drug deal. And Kim doesn't remember this trip happened on Friday. He suddenly remembers it happens on Monday. The California Supreme Court totally ignores that the only objective evidence in the record about what happened here and what may have happened on that day was the records of the Hooper Avenue Elementary School. Walters and Kim claim we're engaging in all of the surveillance from 1130 to 130. Shortly after 130, we arrest Mr. Cortez after he and his wife go to pick up his son, Luis, at his elementary school, his kindergarten. Hooper Kindergarten says the son, Luis, was released at 1130. They came and picked him up then. By the time Walters and Kim claim they were beginning their surveillance, Mr. Cortez was already in custody. The California court of appeals ignores the fact that in spite of two hours of having surveillance by approximately five units, no one took a picture, no one wrote down the license plate of the other cars coming to do the drug deals. No one was able to get the other car. Kagan. Nothing you've said so far is actually responsive to Judge Kleinfeld's question, as I understand the question. The question is, given all that, in addition, how or what is the pertinence of the prosecution? If we assume his prosecutorial term was conducted. In addition to all of the other problems ignored by the California court of appeals, they ignore the fact that the jury went into that room, told by the prosecutor this is an imaginary person. The short answer was that if Morales was there, they couldn't have said that. Right. And whether. Yes, that is the short answer. And told by the police that no one was living there. Had Mr. Morales been present, he would have been able to say I exist, here I am, I was not in a bed yet. I was going out to get my bed. I hadn't put my pictures up yet. I'd only been in that apartment about four days. I'm in the process of moving in. So had the California Supreme Court or the California court of appeals actually considered what Morales could have testified to, I think the prejudice is clear. And the prejudice of trial counsel failing to get the evidence before the jury that would have shown that the prosecutor's contention that he was imaginary and that he wasn't living in that apartment were completely false. And really not. Well, the prosecutor wouldn't have done it. The prosecutor would have told a different story. Quite possibly. The prosecutor might have told the story that they owned it jointly, which is one of the same stories. That brings me to the second question I wanted to address to you. When I go through the facts of the case, including the facts that the jury didn't know, that Morales really existed and that he claimed it was his dope, the only bottom line I can get to is that they were acting together. I just can't see how logically it could all be Morales' operation, even if it was his inventory. I mean, if a fellow works in a grocery store, he doesn't own the inventory. Ralph's does, but he's still selling the inventory when he stands at the counter and takes the customer's money and gives the customer the groceries. The prosecution, I suppose, could have presented that theory had it chosen to indict both of them. It did not. I think it would have had problems with that. Could a jury have reached any other conclusion than that had the defense lawyer put Morales on the stand? Absolutely. The uncontradicted evidence was that Mr. Morales never met Mr. Cortez until he was moving into this little apartment. He didn't rent the apartment from Mr. Cortez. He did not know Mr. Cortez before. He was introduced to him as the handyman. He's going to make sure the apartment is fixed. Morales says, I did not know Mr. Cortez. So he didn't know Cortez long enough to conspire with him, basically. He knew him less than four days, from the point when Mr. Morales rents the apartment, which he does from another individual and then is introduced to Mr. Cortez, for a jury to find that somehow they still conspired, even though they hadn't known each other for more than three days, and that Morales says, no, it is mine, entirely mine, not his at all, I think is quite unlikely. If there are no other questions? I'm out of questions. That's fine. Thank you, counsel. Thank you. I believe you had some rebuttal time, counsel. Thank you, Your Honor. Morales and Cortez also didn't know each other long enough for Morales to trust Cortez with $260,000 worth of narcotics. He left his apartment that day. Is it possible he just had a lapse of mind? The guy said, where are your keys? Here are my keys. Forgot what was on the key chain. Of course anything is possible, but the issue was whether the California Court of Appeals' finding and reliance on that issue is unreasonable. I don't know if that's enough. I'm trusting the maid at the hotel not to steal my stuff while I'm here on the bench. He had no pressing reason to leave that day. He wasn't in a hurry. He simply stated in his letter that he wanted to go buy furniture. But it was an empty apartment. I mean, Bethan, that makes all the sense in the world, that he was going out to furnish it. That may make sense, but then what? He wouldn't be in a hurry, which would. What is the standard we're supposed to be applying? What is the Strickland standard, leaving off the AEDPA standard? What's the Strickland standard? Whether or not it's reasonably probable that a different result would have been obtained. So we're sitting here and we're trying to imagine scenarios, but the fact is that there was a huge hole in what the jury heard, from what it could have heard. And the real issue is how much do we, in trying to figure out what that hole might have mattered, do with the remaining, you know, not — there's not a lot of other evidence that couldn't have been just disbelieved. It's basically the keys and the fabrication, period. There were also payo ledgers found in the car Cortez was driving. He fled from the police. I know he had explanations for that evidence, but if you look at it all together, those are all reasonable inferences to be drawn from the evidence. And the jury could have drawn those inferences had it heard Morales, but the problem is whether they also — whether there's a reasonable probability that they wouldn't have, that they would have believed Morales. Correct. This case is similar to Woodford v. Biscotti, where the U.S. Supreme Court said, yes, there's a possibility a different court could reach a different conclusion on the issue of prejudice. However, the California court's finding to the contrary was not objective. But the California court's — and I don't know quite what you do with this. The California court gave its reasons, and at least some of the reasons have to be — are not reasonable, because they assume the — that the jury would have to believe everything that was said to them by the police. That's not reasonable, right? I don't think they assumed that the jury would have to believe each and every one of those factors. But they stated them as incontrovertible facts, and they weren't incontrovertible facts. And they don't pay any attention at all to the change of — the conflict between the police and the change in the testimony. They just ignore that. So a large part of what the California court of appeals says, it seems to me, is — has to be wiped out as definitely unreasonable. So then what we have is whether some of the other factors, even though they were looking at it cumulatively, are now non-cumulatively sufficient. Just because the California court of appeal relied on factors that may be debatable doesn't mean they were unreasonable inferences based on the evidence. And — But it's unreasonable to think that the jury had to believe it. Isn't that unreasonable? That's — I'm sorry. Can you repeat that? Is it unreasonable to think — to state them as incontrovertible facts as if the jury had to believe them, when there was good reason not to believe them? I don't think that's what the court of appeal was doing. I would disagree with that characterization. I think the court of appeal was saying, this is what we see from the evidence. This is a reasonable interpretation of the evidence. One last point I wanted to make, however, was that if Morales had testified at trial, it actually would have hurt the defense. Because the cornerstone of the defense was that Morales had changed the locks, which explained why Cortez would have to have keys to that unit and a lockbox. However, he testified at the district court evidentiary hearing that he never, ever changed the locks. So that — any credibility the defense may have had at that point, which was minimal due to the forged receipts they entered, would have been completely obliterated by that testimony. And it appears that I am out of time, so unless this court has any more questions, I will submit. Thank you, counsel. Thank you, Your Honors. Cortez v. Lockyer is submitted.
judges: Kleinfeld, Wardlaw, Berzon